WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eric Putnam,<br><br>               Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security<br><br>               Defendants. | No. CV-12-00543-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff's appeal from the Administrative Law Judge's ("ALJ") denial of Plaintiff's Title II application for a period of Disability Insurance Benefits and Plaintiff's Title XVI application for Supplemental Security Income based on disability.

**I.    PROCEDURAL BACKGROUND**

Plaintiff Eric Putnam applied for Disability Insurance Benefits under Title II of the Social Security Act on April 2, 2008. (Administrative Record Transcript ("TR") at 17). Plaintiff also protectively applied for Supplemental Security Income on April 2, 2008. *Id.* The Commissioner denied benefits on July 25, 2008. (TR 79–82). Plaintiff requested reconsideration on August 13, 2008 (TR 83–84), but was again denied on November 4, 2008 (TR 86–88). On November 21, 2008, Plaintiff requested a hearing by the ALJ. (TR 93).

The ALJ issued an unfavorable decision on April 23, 2010, finding that Plaintiff is not disabled under the Social Security Act. (TR 14–32). Plaintiff then appealed the ALJ's

decision to the Appeals Council which denied review on January 11, 2012. (TR 1–3). Plaintiff subsequently filed an appeal with this Court.

Plaintiff argues that the Court should vacate the ALJ's decision because the ALJ erred by: (1) failing properly to assess the opinions of the examining physician, Dr. Palmer (Doc. 26 at 3); (2) rejecting Plaintiff's subjective complaints (*id.* at 5); (3) failing to review Mr. Moore's lay witness evidence (*id.* at 6); and (4) relying on the Medical-Vocational Guidelines to determine that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.* at 20).

## II.   LEGAL STANDARD

The Commissioner's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (internal quotation omitted). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

In determining whether there is substantial evidence to support a decision, the Court considers the record as a whole, weighing both the evidence that supports the ALJ's conclusions and the evidence that detracts from the ALJ's conclusions. *Id.* "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citations omitted). If there is sufficient evidence to support the Commissioner's determination, the Court cannot substitute its own determination. *Reddick*, 157 F.3d at 720–21. Additionally, the ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the Commissioner's decision, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g).

### A. Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show, among other things, that he is "under a disability." 42 U.S.C. § 423(a)(1)(E). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). A person is

> under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

*Id.* § 423(d)(2)(A).

### B. Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 416.920; *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (describing the sequential process). A finding of "not disabled" at any step in the sequential process will end the ALJ's inquiry. 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the ALJ at the final step. *Reddick*, 157 F.3d at 721.

The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If so, the claimant is not disabled.

2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 416.920(c). Basic work activities means the "abilities and aptitudes to do most jobs." *Id.* § 416.921(b). Further, the impairment must either be expected "to result in death" or "to

1    last for a continuous period of twelve months." *Id.* § 416.909 (incorporated by reference
2    in 20 C.F.R. § 416.920(a)(4)(ii)). The "step-two inquiry is a de minimis screening device
3    to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

4          3.    Having found a severe impairment, the ALJ next determines whether the
5    impairment "meets or equals" one of the impairments specifically listed in the
6    regulations. 20 C.F.R. § 416.920(a)(4)(iii). If so, the claimant is found disabled without
7    considering the claimant's age, education, and work experience. *Id.* § 416.920(d).

8          4.    At step four, the ALJ determines whether, despite the impairments, the
9    claimant can still perform "past relevant work." *Id.* § 416.920(a)(4)(iv). To make this
10   determination, the ALJ compares its "residual functional capacity assessment . . . with the
11   physical and mental demands of [the claimant's] past relevant work." *Id.* § 416.920(f). If
12   the claimant can still perform the kind of work the claimant previously did, the claimant
13   is not disabled. Otherwise, the ALJ proceeds to the final step.

14         5.    At the final step, the ALJ determines whether the claimant "can make an
15   adjustment to other work" that exists in the national economy. *Id.* § 416.920(a)(4)(v). In
16   making this determination, the ALJ considers the claimant's residual functional capacity,
17   together with vocational factors (age, education, and work experience). *Id.*
18   § 416.920(g)(1). If the claimant can make an adjustment to other work, then he is not
19   disabled. If the claimant cannot perform other work, he will be found disabled. As
20   previously noted, the ALJ has the burden of proving the claimant can perform other
21   substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

22         With regard to steps 1–5, in this case, the ALJ found that Plaintiff: (1) had not
23   engaged in substantial gainful activity since April 1, 2005 (TR 19); (2) had the following
24   severe impairments: seizure disorder, cerebrovascular accidents/transient ischemic
25   attacks, obesity and spinal radiculopathy (TR 20); (3) did not have an impairment or
26   combination of impairments that meets or medically equals one of the listed impairments
27   in the regulations (TR 23); (4) was unable to perform any past relevant work, but was
28   able to perform sedentary work not involving working at unprotected heights or around

hazardous conditions or moving machinery (TR 27); and (5) "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform" (TR 27). Therefore, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. (TR 28).

**III.    ANALYSIS**

Plaintiff argues that the Court should vacate the ALJ's decision because the ALJ erred by: (1) failing properly to assess the opinions of the examining physician, Dr. Palmer (Doc. 26 at 3); (2) rejecting Plaintiff's subjective complaints (*id.* at 5); (3) failing to review Mr. Moore's lay witness evidence (*id.* at 6); and (4) relying on the Medical-Vocational Guidelines to determine that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (*id.* at 20).

**A.    Whether the ALJ Erred by Failing Properly to Assess Dr. Palmer's Opinions**

Plaintiff alleges that not enough weight was given to the testimony of Plaintiff's examining physician, Dr. Palmer. There are three types of physicians: (1) treating physicians; (2) examining physicians who examine but do not treat the plaintiff; and (3) nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician, but a treating physician's opinion is given the greatest weight. *Id.* To reject the uncontradicted opinion of an examining physician, the ALJ must provide "clear and convincing" reasons for rejecting the opinion. *Id.* "The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830–31.

Dr. Palmer became an examining physician by performing the Consultative Examination Report on October 15, 2008 (TR 598–604), and Plaintiff makes no objection to that finding (Doc. 26 at 3–5). However, Plaintiff's argument that the ALJ did not

properly assess Dr. Palmer's opinions is without merit. The ALJ fully assessed Dr. Palmer's opinions (TR 21), and the ALJ's conclusions were not inconsistent with Dr. Palmer's opinions. The ALJ did not reject Dr. Palmer's opinion.

Dr. Palmer diagnosed Plaintiff with a seizure disorder that was relatively stable on medication, cerebrovascular accidents ("CVA"), left-sided hemiparesis, and Tourette's syndrome. (TR 600). The ALJ determined that Plaintiff had the following severe impairments: seizure disorder, CVAs, obesity and spinal radiculopathy. (TR 20). Dr. Palmer opined that Plaintiff had Tourette's syndrome, but he also noted that the syndrome presented only as a "twitching and jumping about [of] his right shoulder" (TR 599). The ALJ similarly noted that Plaintiff had Tourette's syndrome which did "not appear to manifest itself as more than occasional twitching movements." (TR 23). Dr. Palmer opined that Plaintiff had some left-sided weakness, but presented 5/5 strength in the muscle groups on his right side and was ambulatory using an ankle-foot orthosis ("AFO") without the need for an ambulatory support device. (598–601). The ALJ correspondingly found that Plaintiff had some loss of strength and sensation on his left side, was capable of ambulating with an orthotic device or cane, and was capable of using his left arm and hand. (TR 23). Dr. Palmer concluded that Plaintiff was limited to carrying less than ten pounds due to his left-sided weakness, had no limitations in sitting, and could stand or walk six to eight hours of an eight hour work day. (TR 598–601). Dr. Palmer also noted that Plaintiff could occasionally climb ramps or stairs, stoop, kneel, crouch, crawl, reach, handle, finger, and feel. (TR 602). The ALJ likewise concluded that Plaintiff had the residual functional capacity to perform sedentary work, as defined in the regulations, that did not involve work around heights or moving machinery. (TR 23). Sedentary work, as defined in the regulations,

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

1  404 CFR § 404.1567(a).

2  The ALJ's findings are not inconsistent with Dr. Palmer's opinions. Due to the similarity between the ALJ's conclusions and Dr. Palmer's opinions, the ALJ did not reject Dr. Palmer's testimony as an examining physician. Therefore, Plaintiff's claim that the ALJ failed to evaluate properly Dr. Palmer's opinions is without merit.

**B.      Whether the ALJ Erred by Not Fully Crediting Plaintiff's Subjective Complaints**

> An ALJ must engage in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Lingenfelter* [*v. Astrue*], 504 F.3d [1028,] 1035–36 [(9th Cir. 2007)]. First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' " *Id.* at 1036 (quoting *Bunnell* [*v. Sullivan*], 947 F.2d [341,] 344 [(9th Cir. 1991)]). The claimant is not required to show objective medical evidence of the pain itself or of a causal relationship between the impairment and the symptom. *Smolen* [*v. Chater*], 80 F.3d 1273, 1282 (9th Cir. 1996). Instead, the claimant must only show that an objectively verifiable impairment "could reasonably be expected" to produce the claimed pain. *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also* SSR 96–7p at 2; *Carmickle* [*v. Comm'r, Soc. Sec. Admin.*], 533 F.3d [1155,] 1160–61 [(9th Cir. 2008]) ("reasonable inference, not a medically proven phenomenon"). If the claimant fails this threshold test, then the ALJ may reject the claimant's subjective complaints. *See Smolen*, 80 F.3d at 1281 (citing *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986) (reaffirmed in *Bunnell*, 947 F.2d 341)).
>
> Second, if the claimant meets the first test, then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala,* 50 F.3d 748, 749–750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain his credibility evaluation. *Robbins* [*v. Soc. Sec. Admin.*], 466 F.3d [880,] 883 [(9th Cir. 2008)] (citing *Smolen*, 80 F.3d at 1283–84 ("Once a claimant meets [step one] and there is no affirmative evidence suggesting she is malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so.")); *see also, e.g.*, *Lingenfelter*, 504 F.3d at 1036 (if the ALJ has found no

- 7 -

>evidence of malingering, then the ALJ may reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so").

*Trembulak v. Colvin*, No. CV-12-2420-PHX-JAT, 2014 WL 523007, at *8–9 (Dist. Ariz. Feb. 10, 2014).

In the first step of the analysis, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms. (TR 25). At step two of the analysis, the ALJ made no finding of malingering by Plaintiff, but the ALJ found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." (TR 25). The Court finds that the ALJ made specific findings that Plaintiff's prior statements to his doctors, the doctors' observations of Plaintiff's behavior, Plaintiff's ability to live alone, and the objective medical evidence do not support the extent of Plaintiff's complaints. (TR 25–27). Additionally, the ALJ specifically found that the hospital records contradicted Plaintiff's testimony regarding alcohol use. (TR 26). Therefore, the Court finds that the ALJ provided clear and convincing reasons, supported by the record, for his determination that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not fully credible.

First, Plaintiff claimed that he had multiple strokes in the past which caused his left-sided weakness. (Doc. 26 at 9–10). However, the ALJ cited the treating neurologist, Dr. Morehead's, findings that Plaintiff's left-sided issues appeared "nonphysiologic," and his symptoms did not correspond to an MRI and four CT scans which were all negative. (TR 20, 26 (citing TR 548–58)). The ALJ also noted that Dr. Morehead opined that there was not an "organic cause" for Plaintiff's left-sided weakness. (TR 25 (citing TR 556)). Second, Plaintiff claimed that he was unable to sit or stand for more than 20 to 30 minutes and that he could not walk more than 100 feet before resting for 30 minutes. (TR 24–25). The ALJ cited Dr. Palmer's findings for the conclusion that there was no indication that Plaintiff was unable to sit, stand, or walk for the brief periods he alleged.

- 8 -

(TR 25 (citing 598–604)). The ALJ also noted that Dr. Palmer found Plaintiff able to ambulate with a limp using an AFO and without any other assistive device. (TR 25 (citing TR 599)). Third, Plaintiff reported having seizures "every other week to every week." (TR 163). However, the ALJ "note[d] that this condition ha[d] repeatedly been well controlled with the proper medication and instances in the record in which claimant ha[d] been hospitalized due to seizures ha[d] been associated with misuse of medication and/or alcohol abuse." (TR 25 (citing TR 614, 322, 287, 326)). The ALJ also cited Dr. Wang's opinion that Plaintiff's seizures were well controlled with medication. (TR 25 (citing TR 619–32)). Fourth, Plaintiff claimed he experienced severe headaches "almost daily" which prevented him from moving around and affected his vision. (TR 161–63). However, after examining Plaintiff's medical records, the ALJ found that Plaintiff "did not complain of headaches to Dr. Palmer and regular problems with headaches are not noted by Drs. Wang, Moorehead or the examiners as [sic] the Sonora Family Practice. Moreover . . . [Plaintiff] told Dr. Vega that he only experiences bad headaches 3–4 times per month." (TR 22). Fifth, at the hearing before the ALJ in 2009, Plaintiff denied any alcohol abuse, and claimed he had only used alcohol once in the previous four and a half years. (TR 789). However, the ALJ found that Plaintiff required hospitalization in 2007 and 2008 due, at least in part, to alcohol abuse. (TR 26). Sixth and finally, the ALJ noted that Plaintiff testified that he is "capable of living alone, caring for himself, handling his finances and engaging in some household chores and activities," which is generally inconsistent with the level of impairment Plaintiff alleges. (TR 26).

In sum, the ALJ specifically found numerous contradictions between Plaintiff's statements concerning the intensity and limiting effects of his symptoms and Plaintiff's prior statements to his doctors, the doctors' observations of Plaintiff's behavior, Plaintiff's ability to live alone, and the objective medical evidence. Additionally, the hospital records contradict Plaintiff's testimony regarding alcohol use. Therefore, the Court finds that the ALJ provided clear and convincing reasons, supported by the record, for his determination that Plaintiff's statements concerning the intensity, persistence, and

limiting effects of his symptoms are not fully credible. Accordingly, the ALJ did not commit legal error by not fully crediting Plaintiff's subjective complaints.

## C. Whether the ALJ Erred by Rejecting Lay Witness Evidence

Lay witness testimony about a claimant's symptoms or the effect on the claimant's ability to work is "competent evidence that the ALJ must take into account." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Lay witness testimony about a claimant's symptoms "cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). If the ALJ expressly determines to disregard such testimony, "he must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). Where lay witness testimony is rejected for the same reasons as the claimant's own testimony, and the ALJ provides clear and convincing reasons for rejecting the claimant's own subjective complaints, the ALJ has given germane reasons for rejecting the lay witness's testimony. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

Plaintiff's argument that the ALJ improperly rejected Plaintiff's friend, Mr. Moore's, testimony about Plaintiff's symptoms is without merit. The ALJ expressly stated that the third party function report completed by Mr. Moore "reiterates the description of the functional limitations the claimant cites." (TR 25 (citing TR 123–130)). The Court finds that the clear and convincing reasons provided by the ALJ for rejecting Plaintiff's subjective complaints, as discussed above, constitute a germane reason for rejecting Mr. Moore's testimony. Accordingly, the ALJ did not err by rejecting Mr. Moore's lay witness testimony.

## D. Whether the ALJ Erred by Relying on the Medical-Vocational Guidelines to Determine That There Are Jobs That Exist in Significant Numbers in the National Economy That Plaintiff Can Perform

The ALJ may determine that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform in two ways: (1) by the testimony of a vocational expert; or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. § 404(P) app. 2. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The ALJ may rely

on the Guidelines ("grids") in lieu of the testimony of a vocational expert "only when the grids accurately and completely describe the claimant's abilities and limitations." *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985). The "ALJ must not apply the grids mechanically in borderline cases or where claimants possess limitations that are not factored into the guidelines." *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985). Where a person has both severe exertional and non-exertional impairments, the grids may not be used to direct a conclusion of nondisability. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1116 (9th Cir. 2006). "A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines. In such a case, the guidelines would be inapplicable." *Desrosiers v. Sec'y of Health and Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988). If a claimant suffers from non-exertional limitations not contemplated by the grids, the ALJ is required to call upon a vocational expert to establish whether the claimant is disabled. *Tackett*, 180 F.3d at 1102. "Exertional limitations" are the limitations and restrictions imposed by the claimant's impairment which affect only the ability to meet the strength demands of jobs. 20 C.F.R. § 416.969a(b). "Nonexertional limitations" are the limitations and restrictions imposed by the claimant's impairment which affect only the ability to meet the demands of jobs other than the strength demands. *Id.* (c)(1).

Plaintiff claims that the ALJ erred by relying on the grids for two reasons: (1) transferability of previous work skills was at issue (Doc. 26 at 24); and (2) his residual functional capacity for sedentary work was significantly compromised by other limitations. (*id.* at 22, 25). Under the second reason, Plaintiff asserts two limitations that significantly compromise his capacity for sedentary work: (a) the use of a quad-cane (*id.* at 22); and (b) the diminished use of his left hand (*id.* at 25).

Plaintiff's first claim, that the ALJ erred by relying on the grids because transferability of previous work skills was at issue, is without merit and misconstrues S.S.R 82-41. In fact, the more transferable skills retained, the more likely that a claimant is not disabled. S.S.R. 82-41. "Even if it is determined that there are no transferable

skills, a finding of 'not disabled' may be based on the ability to do unskilled work." *Id.* In this case, the ALJ correctly determined that transferability of job skills was not material, precisely because the grids support a finding of "not disabled" regardless of Plaintiff's transferable job skills. (TR 27).

Plaintiff's second claim is that the ALJ erred in relying upon the grids because his residual functional capacity for sedentary work was significantly compromised by other limitations. (Doc. 26 at 20). The ALJ determined that Plaintiff's exertional capacity limits him to sedentary work with non-exertional limitations of only being unable to work at unprotected heights or around hazardous conditions or moving machinery. (TR 23–24). However, Plaintiff claims that he has two additional non-exertional limitations: (a) the use of a quad-cane (Doc. 26 at 22); and (b) the diminished use of his left hand (*id.* at 25).

Plaintiff first claims that the use of a quad-cane in his right hand establishes that he cannot carry articles like docket files, ledgers, and small tools, as required to perform the full range of sedentary work, because his left hand is not strong enough. (*Id.* at 22). However, the ALJ found that Plaintiff is able to ambulate wearing an AFO, and does not need a cane. (TR 21). This finding is supported by Dr. Palmer's testimony as an examining physician. (TR 599, 601). Because objective medical evidence established that Plaintiff is ambulatory without the cane, Plaintiff's claim that the use of a quad-cane is a severe non-exertional limitation upon his ability to perform the full range of sedentary work is without merit.

Plaintiff next claims that he has diminished use of his left hand. (Doc. 26 at 25). The ALJ accepted the fact that Plaintiff has diminished use of his left hand, but concluded that this limitation is irrelevant because Plaintiff is right-handed and Plaintiff's right hand is unaffected. (TR 26). However, because the ALJ accepts the fact that Plaintiff has diminished use of his left hand, Plaintiff is incapable of performing jobs requiring bilateral manual dexterity.

Where a claimant is limited to sedentary work and has a permanent injury to one hand which precludes jobs requiring bilateral manual dexterity, reliance on the grids is

legal error. *Fife v. Heckler*, 767 F.2d 1427, 1430 (9th Cir. 1985). Accordingly, the ALJ committed legal error by relying on the grids in this case.

Moreover, where the grids "do not accurately and completely describe [Plaintiff's] limitations," "the ALJ [is] *required* to take the testimony of a vocational expert," and failing to do so is reversible error. *Tackett v. Apfel*, 180 F.3d 1094, 1104 (9th Cir. 1999) (emphasis in original). Here, the Court finds that Plaintiff's inability to use his left hand renders the grids inapplicable. Nonetheless, the ALJ failed to hear testimony from a vocational expert. Accordingly, the ALJ committed reversible error.

## V. CONCLUSION

Accordingly, the ALJ did not commit legal error in assessing the opinions of the examining physician, Dr. Palmer; in rejecting Plaintiff's subjective complaints; in rejecting Mr. Moore's lay witness evidence; in finding that transferability of job skills was not material; or in rejecting the use of a quad-cane as a severe non-exertional limitation upon Plaintiff. However, the Court finds that the ALJ did commit legal error in relying upon the grids, because the grids do not accurately and completely describe Plaintiff's abilities and limitations. Therefore, the testimony of a vocational expert is necessary to determine whether there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

Based on the foregoing,

**IT IS ORDERED** that the decision of the Administrative Law Judge is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion. This order shall serve as the mandate in this case**.**

Dated this 19th day of March, 2014.

James A. Teilborg
Senior United States District Judge